SCHENK & McDONALD v. WORTHEN LUMBER MILLS.

(Circuit Court of Appeals, Ninth Circuit.    February 3, 1919.)

No. 3179.

1. Logs and Logging ☞34(1)—Modification of Contract by Subsequent Agreement.

That logs to be cut and delivered by defendants to plaintiff, which by the terms of the contract were to be cut from certain lands, were by subsequent agreement of the parties cut from other lands, did not take them out of the contract, where they were delivered and paid for at the price fixed therein.

2. Logs and Loggings ☞34(1)—Contracts—Ascertainment of Quantity—Provision for Submission to Third Party.

A provision, in a contract for the sale of logs to be cut and delivered by defendants to plaintiffs, that "in case of dispute over scale the scale of a competent disinterested person shall be accepted as final by both parties," is valid and binding.

In Error to the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Action at law by the Worthen Lumber Mills against Schenk & McDonald, a copartnership, and Edward Schenk and Gordon D. McDonald, individually.    Judgment for plaintiff, and defendants bring error. Affirmed.

John Rustgard, of Juneau, Alaska, for plaintiffs in error.

J. A. Hellenthal and Simon Hellenthal, both of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge.    The defendant in error brought this action in the court below to recover $1,900.03, alleged to have been overpaid the plaintiffs in error, defendants there, for certain logs theretofore delivered to it by the defendants to the action.    The mill of the plaintiff company is located at Juneau, Alaska, and the logs respecting which the respective parties contracted were to be cut upon the forest reserve of the government in Alaska, and, according to the record, were to be received by the milling company when dumped into the water and properly boomed by the sellers.    One of the essential portions of the two written contracts into which the parties entered was a stipulation to the effect that such delivery should take place not exceeding a certain stipulated number of miles from the mill of the plaintiff company.

With the exception of the price per thousand feet of the logs and of the number of miles just referred to, the two contracts are in all essential particulars the same, so that it will be sufficient to set out the substance of the first one, which was entered into on the 27th day of March, 1916, by which the defendants to the action agreed to furnish and deliver to the plaintiff company 1,000,000, more or less, feet of first-class merchantable spruce and cedar logs of a specific description, securely boomed in a prescribed way in the waters of the sea,

inlet, or bay contiguous to the place where cut for the tugboat of the plaintiff to reach when ready to tow, such place not to exceed 175 miles distant from the mill of the plaintiff at Juneau by the ordinary route of water travel. The price fixed for the logs covered by that contract per 1,000 feet was $6 free of all taxes and stumpage, which price was to be paid by the plaintiff at its mill; it, however, agreeing to advance to the defendants the money required for stumpage, the amount so advanced to be a lien on the logs, and to be deducted from the purchase price thereof.

Besides other provisions of the contract not pertinent to the present inquiry, it contained these provisions, which are pertinent:

"The said logs shall be scaled by the Scribner log rule and the said first party [defendant] agrees to accept the mill scale. The said logs shall be cut at north end Prince of Wales Island, Alaska, under the terms and conditions required by the forest reserve regulations. * * * Said logs shall be cut, properly boomed, and lodged in a safe and secure, but accessible, place, and ready for towing, as follows: As soon as possible, but not later than September 1, 1916. Each boom of logs shall be scaled by the party of the first part [defendant], and this scale shall be sent to party of the second part [plaintiff] for the purpose of comparison with number of pieces in boom: and said logs shall be considered delivered when and in such amounts as taken in tow by the tugboat of the said second party [plaintiff]. And the first party [defendant] agrees to notify the party of the second part [plaintiff] at its place of business in Juneau when any boom is ready for towing. And it is further agreed that, in case of dispute over scale, the scale of a competent disinterested person shall be accepted as final by both parties. It is further agreed that party of the first part [defendant] shall furnish a boat of at least 50 horse power to assist in towing said logs as far as Petersburg, Alaska; cost of said assistance included in above price of logs."

The case was tried with a jury, which returned a verdict for the plaintiff in the sum of $838.53, upon which judgment was entered against the defendants for that sum, with costs.

[1] One of the points urged on behalf of the plaintiffs in error is that the logs, which it is conceded they delivered to the milling company in 1916, were not delivered under the contract of March 27, 1916, and this because they were not cut from the north end of Prince of Wales Island.

We think it is apparent from the contract of the parties that what they were contracting for was logs of a specific kind and description at a specified price, which at the time of the making of the contract it was supposed could and would be cut from lands at the north end of Prince of Wales Island. But the testimony of the defendant McDonald, who signed the contract for himself and on behalf of his associate, expressly states, in effect, that he subsequently found, upon examination of the timber at the north end of that island, that it was not of the required quality, and so informed the plaintiff in the case, with whom he agreed to and did deliver in four different rafts the logs contracted for, cut from other lands, and gathered at Portage Bay, Port Malmsbury, and Duncan Canal. It is not pretended that the logs so delivered were not delivered at the price fixed in the contract of March 27, 1916, and paid for thereunder.

We think there is no merit whatever in the contention of the plain-

tiffs in error that such logs were not delivered pursuant to the provisions of the written contract of March 27th.

Another complete answer to the position of the plaintiffs in error respecting the contract of March 27, 1916, is that the record shows that the defendants to the action demanded of and received from the plaintiff a bill of particulars, together with undisputed evidence that the plaintiff paid the defendants in full for all the logs delivered by them under the 1916 contract, except the sum of $74.42, thereby leaving the plaintiff indebted to the defendants in that sum for logs delivered under that contract; and the court expressly instructed the jury that the plaintiff had and could have no claim against the defendants by virtue of the contract of March 27, 1916, whether anything was or was not done under it.

[2] Both contracts, as has been said, provided for two scalings—one by the sellers, which scaling, according to the contracts, was to be sent to the purchaser "for the purpose of comparison with number of pieces in boom"; the other to be made by the milling company according to the "Scribner log rule," which the sellers expressly agreed to accept, with the further and express stipulation of both parties that, "in case of dispute over scale, the scale of a competent disinterested person shall be accepted as final by both parties."

The court below in its rulings held, and we think rightly, that the last-quoted provision of the contracts was binding and conclusive upon them.

But one other matter need be alluded to, although we have given careful consideration to all the contentions on the part of the plaintiffs in error. The defendants set up several counterclaims against the plaintiff, the first and third of which were rightly withdrawn by the court from the jury for lack of any evidence in support of them. The second was:

"That on and between June 24, 1916, and the 16th day of September, 1916, defendants furnished to plaintiff at the latter's instance and request the use of a towboat with crew for periods aggregating 172 hours; that the same was actually and reasonably worth the sum of $5 per hour, totaling $860."

With respect to that matter the contention of the plaintiff was that the defendants were to charge only the actual cost, which question the court, under appropriate instructions, left to the jury to determine.

The fourth counterclaim was as follows:

"That during the months of July and August, 1917, defendants loaned to plaintiff 72 boom chains and 3 piling chains, which plaintiff agreed either to return to defendants or pay for at their value; that plaintiff has neglected and refused to return the said chains, and that the actual and reasonable value of said boom chains is $3 for each, or the total of $216, and the value of the said piling chains is $7.50 for each, or the total of $22.50."

The fifth counterclaim is this:

"That on the 15th day of September, A. D. 1916, at plaintiff's special instance and request, and for its benefit, defendants furnished six workmen for rebooming a raft of logs at Duncan Canal, Alaska, which work continued for a period of 9 hours, making a total of 54 hours; that the same was actually and reasonably worth and of the value of 50 cents per hour, or a total of $27; and that no part of the same has ever been paid."

The facts regarding the two last-mentioned counterclaims the court left to the determination of the jury, with appropriate instructions, in the event of its finding thereon in favor of the defendant.

The record containing no error calling for a reversal, the judgment is affirmed.